## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ALPHA MODUS VENTURES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.  25-963 |
| | ) | |
| v. | ) | |
| | ) | |
| RACKSPACE US, INC., | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus Ventures, LLC. ("AMV" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against Rackspace US, Inc. ("Rackspace" or "Defendant") for infringement of United States Patent Nos. 11,108,591 ("the '591 Patent"), 11,310,077 ("the '077 Patent"), and 11,303,473 ("the '473 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      AMV is a North Carolina limited liability company with principle offices located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief Defendant is a corporation organized and existing under the laws of the State of Texas.  Defendant does business in the State of Texas and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Inc. at 211 E. 7th Street, Suite 620, Austin, TX 78701.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      Rackspace is subject to the general and specific personal jurisdiction of this Court, based upon its regularly conducted business in the State of Texas and in the Western District of Texas ("District"), including conduct giving rise to this action.

6.      Rackspace has conducted and does conduct business within the State of Texas.

7.      Rackspace has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over Rackspace at least because Rackspace has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the District, thus committing acts of infringement within the District, and placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Western District of Texas. Rackspace, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over Rackspace at least because Rackspace has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Rackspace would not offend traditional notions of fair play and substantial justice.

10.     This Court has specific personal jurisdiction over Rackspace in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or

2

are related to Rackspace's voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1400(b).

12.    Rackspace is registered to do business in Texas, and upon information and belief, Rackspace has transacted business in this District and has committed acts of direct and indirect infringement in this District.

13.    Rackspace has regular and established places of business in this District including its principle place of business at 1 Fanatical Place, Windcrest, TX 78218 and lists its Global Headquarters on its website https://www.rackspace.com/contact at 19122 US Highway 281N Ste 128, San Antonio, TX 78258.  Upon information and belief, Rackspace employs individuals in this judicial District involved in the research, development, sales, and marketing of its products and services that infringe the Asserted Patents.

14.    Rackspace has previously consented to venue in this District. *See BCS Sofware, LLC v. Rackspace US., Inc*., No. 6:21-CV-0119, at Doc. No. 10 (W.D. Tex. May 14, 2021).

15.    Rackspace offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas and in this District.

## BACKGROUND OF THE PATENTED TECHNOLOGY

16.    Prior to the inventions described in the Patents, most Storage Area Networks (SANs) were built using a technology called Fibre Channel.

17.    A SAN is a special-purpose network for server-to-storage communication, typically implemented using Fibre Channel technology because of its high-performance characteristics. The Fibre Channel standards are governed by INCITS Technically Committee 11.

18.    The various standards the comprise Fibre Channel have evolved over time to describe a set of layer 1 through layer 4 protocols.

19.    Collectively taken together as Fibre Channel, SAN networking technology was adopted by disk drive manufacturers as the primary SAN interface for their products. However, notwithstanding standardization efforts, Fibre Channel was plagued with inoperability issues. Coupled with a smaller market for SANs, costs and prices for Fibre Channel equipment were often high.

20.    With respect to Local Area Networks (LANs), a LAN is a general-purpose network for server-to-server and server-to-Internet communication, typically carrying TCP/IP traffic over high-speed Ethernet. The Ethernet standards are governed by the IEEE LAN/MAN Standards Committee 802. The various standards that comprise Ethernet have evolved over time to describe a robust and flexible set of Physical (layer 1) and MAC (layer 2) protocols. Collectively taken together as Ethernet, LAN networking technology demonstrated exceptional interoperability between multiple equipment vendors and adoption by the computing industry.

21.    Servers, connected to both networks, use the SAN to access remote storage and the LAN for all other communication. While this two-network architecture offered certain benefits, it created a disjointed communication infrastructure that required considerable support overhead. Moreover, SAN standards significantly lagged behind LAN standards. Accordingly, the inventions described in the Patents sought to unify LAN and SAN, enabling SAN devices to be accessed using LAN technology.

22.    Prior efforts to unify LAN and SAN primarily involved running various storage protocols over TCP/IP, protocols commonly known as IP storage. The three most notable efforts are referred to as iSCSI, FCiP, and iFCP. But those solutions required a gateway to provide a TCP connection and perform the physical connectivity to the SAN device's native electrical interface, and thus were inherently expensive.

23.    To solve these problems, the inventors of the Patents determined to use an apparatus—called a Fibre Channel over Ethernet Transformer (FCoE Transformer)—that could transform Fibre Channel data into Ethernet frames and visa-versa.

24.    An FCoE Transformer is the interface between the Ethernet and the Fibre Channel SAN network. The FCoE Transformer is responsible for converting the FCoE protocol to the Fibre Channel PC-1 protocol and visa-versa.

25.    Each FCoE Transformer has at least two ports: an Ethernet Port and a Fibre Channel port. An FCoE capable NIC or embedded MAC (an FCoE port) in a server can communicate with multiple FCoE Transformers.  These communications are referred to as an association between an FCoE port and a Transformer.

26.    The FCoE port in a server is referred to as an FCoE Host Bus Adapter (HBA). When initializing and associating with one or more FCoE ports, the FCoE Transformer performs link and loop initialization and participates in physical address assignment under the direction of an Ethernet port. Once initialized and associated, the FCoE Transformer translates PC-1 data frames, primitive signals and primitive sequences to and from FCoE frames.

27.    An FCoE Transformer may be used between any Fibre Channel HBA, fabric or device and any FCoE HBA or Fabric. Specifically, an FCoE Transformer can be used between an FC HBA and an FCoE Fabric or it may be used between an FCoE Fabric and a Fibre Channel

device. Two FCoE Transformers may also be used back to back on the Ethernet interface without an intervening FCoE fabric.

## THE '591 PATENT

28.    AMV is the owner by assignment of all right, title, and interest in and to United States Patent No. 11,108,591 ("the '591 Patent") titled "Transporting fibre channel over ethernet," including the right to sue for all past, present, and future infringement. A true and correct copy of the '591 Patent is attached to this Complaint at Exhibit A.

29.    The '591 Patent issued from U.S. Patent Application Serial No. 13/999,756.

30.    The '591 Patent claims the benefit of U.S. Patent Application Serial No. 10/689,540, filed on October 21, 2003.

31.    The Patent Office issued the '591 Patent on August 31, 2021, after a full and fair examination.

32.    The '591 Patent expired on October 21, 2023.

33.    The '591 Patent relates to a method and apparatus for transporting Fibre Channel data frames and primitive signals over Ethernet.

34.    In one embodiment of the invention, Fibre Channel data frame and primitive signals are transported over Ethernet instead of using the Fibre Channel FC-1 and FC-0 protocols.

35.    This allows less expensive Ethernet equipment and devices to transport and perform services for Fibre Channel connected devices without having a physical Fibre Channel interface. The ability to provide Fibre Channel services and functions without having a physical Fibre Channel interface allows existing Ethernet equipment to be placed into service as SAN components without modification.

36.    Claim 1 of the '591 Patent reads:

1. A method comprising the steps of:

6

providing a Server (**32**) including an FCoE HBA (**40**);

said FCoE HBA (**40**) including a Virtual Fibre Channel Port (**42**) and an Ethernet Interface (**44**);

providing a Layer 2 Ethernet Switch (**24**);

providing an FCoE Transformer (**46**) including an Ethernet Interface (**44**) and a Fibre Channel Interface (**48**);

providing a Fibre Channel Device (**23**);

said FCoE HBA (**40**) sending an FCoE Frame (**93**) to said FCoE Transformer (**46**) via said Layer 2 Ethernet Switch (**24**);

said FCoE Frame (**93**) is conveyed in an Ethernet Frame (**83**) without utilizing an IP packet;

said FCoE Transformer (**46**) converting said FCoE Frame (**93**) to a Fibre Channel Frame (**71**);

said FCoE Frame (**93**) including an SOF field (**124**) for providing an SOF character used to start said Fibre Channel Frame (**71**); said SOF field (**124**) for encoding said SOF field Fibre Channel Frame (**70**);

said FCoE Frame (**93**) including an EOF field (**126**) for providing an EOF character used to end said Fibre Channel Frame (**71**); said EOF field (**126**) for encoding said EOF field Fibre Channel Frame (**80**); and

said FCoE Transformer (**46**) sending said Fibre Channel Frame (**71**) to said Fibre Channel Device (**23**).

## THE '077 PATENT

37.    AMV is the owner by assignment of all right, title, and interest in and to United States Patent No. 11,310,077 (the "'077 Patent") titled "Transporting fibre channel over ethernet," including the right to sue for all past, present, and future infringement. A true and correct copy of the '077 Patent is attached to this Complaint at Exhibit B.

38.    The '077 Patent issued from U.S. Patent Application No. 17/346,054 filed on August 4, 2020.

39.     The '077 Patent claims the benefit of U.S. Patent Application Serial No. 10/689,540, filed on October 21, 2003.

40.     The Patent Office issued the '077 Patent on April 19, 2022, after a full and fair examination.

41.     The '077 Patent expired on October 21, 2023.

42.     The '077 Patent is directed to an apparatus and a system that perform the method of providing a FCoE Transformer including an Ethernet Interface and a Fibre Channel Interface, receiving, at the FCoE Transformer, an FCoE Frame via a Layer 2 Ethernet Switch, converting, at the FCoE Transformer, the FCoE Frame to a Fibre Channel Frame.

43.     The FCoE Frame includes a SOF field included in an FCoE Transport Header for providing an SOF character used to start the fibre channel frame, and the SOF field in the FCoE Transport Heading is for encoding the SOF field, Fibre Channel Frame.

44.     The FCoE Frame includes an EOF field included in an FCoE Transport Header for providing an EOF character used to end the fibre channel frame, and the EOF field in the FCoE Transport Header is for encoding the EOF field, Fibre Channel Frame. The method includes transporting the Fibre Channel Frame.

45.     Claim 1 of the '077 Patent reads:

1. A method of operating a FCoE transformer including an Ethernet interface and a fibre channel interface, wherein the method comprises the steps of:

receiving, at the the FCoE transformer, an FCoE frame via a layer 2 Ethernet switch;

converting, at the FCoE transformer, the FCoE frame to a fibre channel frame, wherein: the FCoE frame includes a SOF field included in an FCoE transport header for providing an SOF character used to start the fibre channel frame, and the SOF field in the FCoE transport header is for encoding the SOF field, fibre channel frame, and

the FCoE frame includes an EOF field included in an FCoE transport header for providing an EOF character used to end the fibre channel frame, and the EOF field in the FCoE transport header is for encoding the EOF field, fibre channel frame; and transporting the fibre channel frame.

## THE '473 PATENT

46.     AMV is the owner by assignment of all right, title, and interest in and to United States Patent No. 11,303,473 (the "'473 Patent") titled "Transporting fibre channel over ethernet," including the right to sue for all past, present, and future infringement. A true and correct copy of the '473 Patent is attached to this Complaint at Exhibit C.

47.     The '473 Patent issued from U.S. Patent Application No. 17/346,048, filed on June 11, 2021.

48.     The '473 Patent claims the benefit of U.S. Patent Application Serial No. 10/689,540, filed on October 21, 2003.

49.     The Patent Office issued the '473 Patent on April 12, 2022, after a full and fair examination.

50.     The '473 Patent expired on October 21, 2023.

51.     The '473 Patent  is directed to an apparatus and system for performing the method of providing a FCoE HBA including a Virtual Fibre Channel Port and an Ethernet Interface, providing a Layer 2 Ethernet Switch, and sending an FCoE Frame via the Layer 2 Ethernet Switch.

52.     The FCoE Frame includes a SOF field included in an FCoE Transport Header for providing an SOF character used to start a Fibre Channel Frame, and the SOF field in the FCoE Transport Header is for encoding the SOF field, Fibre Channel Frame.

53.     The FCoE Frame includes an EOF field included in an FCoE Transport Header for providing an EOF character used to end the Fibre Channel Frame, and the EOF field in the FCoE Transport Header is for encoding the EOF field, Fibre Channel Frame.

54.     Claim 1 of the '473 Patent reads:

1. A method of operating a FCoE HBA including a virtual fibre channel port and an Ethernet interface, wherein the method comprises the steps of:

connecting to a layer 2 Ethernet switch;

sending an FCoE frame via the layer 2 Ethernet switch, wherein:

the FCoE frame includes a SOF field included in an FCoE transport header for providing an SOF character used to start a fibre channel frame, and the SOF field in the FCoE transport header is for encoding the SOF field, fibre channel frame, and

the FCoE frame includes an EOF field included in an FCoE transport header for providing an EOF character used to end the fibre channel frame, and the EOF field in the FCoE transport header is for encoding the EOF field, fibre channel frame.

## **RACKSPACE**

55.     Rackspace is a cloud computing company that sells networking hardware, software, and telecommunications equipment.  Rackspace was founded in 1996.

56.     Rackspace provides at least DCX® 8510 Backbones and Gen 5 Fibre Channel Technology products and services, and other products and services practicing the FCoE standard (the "Accused Products"), which directly infringe the Asserted Patents.

57.     For example, the data sheets for the DCX® 8510 Backbones state they provide support for FCoE through Brocade FCOE10-24 Blade and Data Center Bridging (DCB). https://docs.broadcom.com/doc/12379845

58.     This case is filed to address and seek redress for the unauthorized use of AMV's patented technology by Rackspace, which has led to significant commercial gains for Rackspace at the expense of AMV's proprietary rights and investments.

## COUNT I

## (DIRECT PATENT INFRINGEMENT OF THE '591 PATENT)

59.     AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

60.     Rackspace has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '591 Patent, including the Accused Products.

61.     The Accused Products utilize a server, including an FCoE HBA.

62.     The Accused Products include a Virtual Fibre Channel Port and an Ethernet Interface.

63.     The Accused Products provide a Layer 2 Ethernet Switch.

64.     The Accused Products provide an FCoE Transformer including an Ethernet Interface and a Fibre Channel Interface.

65.     The Accused Products provide a Fibre Channel Device.

66.     The Accused Products send an FCoE Frame to said FCoE Transformer via say Layer 2 Ethernet Switch.

67.     The Accused Products convey the FCoE Frame without utilizing an IP packet.

68.     The Accused Products use the FCoE Transformer to convert said FCoE Frame to a Fibre Channel Frame.

69.     The Accused Products have an FCoE Frame which includes an SOF field for providing an SOF character used to start said Fibre Channel Frame; said SOF field for encoding said SOF field Fibre Channel Frame.

70.     The Accused Products have an FCoE Frame which includes an EOF field for providing an EOF character used to end said Fibre Channel Frame; said EOF field for encoding said EOF field Fibre Channel Frame.

71.     The Accused Products have an FCoE Transformer which sends said Fibre Channel Frame to said Fibre Channel Device.

72.     Rackspace has directly infringed the '591 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '591 Patent.

73.     The Accused Products satisfy each and every element of the asserted claim of the '591 Patent either literally or under the doctrine of equivalents.

74.     Rackspace's infringing activities are and have been without authority or license under the '591 Patent.

75.     As a direct and proximate result of Rackspace's infringement of the '591 Patent, AMV has suffered and will continue to suffer damage.

76.     AMV is informed and believes that Rackspace knew or was willfully blind to the patented technology of the '591 Patent. Despite this knowledge or willful blindness, Rackspace has acted with blatant disregard for AMV's patent rights with an objectively high likelihood of infringement.

77.     AMV is informed and believes that Rackspace has made no efforts to avoid infringement of the '591 Patent, despite its knowledge and understanding that its products and systems infringe the '591 Patent.

78.     Therefore, Rackspace's infringement of the '591 Patent is willful and egregious, warranting an enhancement of damages.

79.     As such, Rackspace has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '591 Patent, justifying an award to AMV of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT II**

**(INDUCED PATENT INFRINGEMENT OF THE '591 PATENT)**

80.     AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

81.     Rackspace is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '591 Patent , because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '591 Patent.

82.     Rackspace's use of the Accused Products demonstrates specific intent to induce infringement of the '591 Patent. Rackspace encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '591 Patent.

83.     Rackspace's knowledge of the '591 Patent, combined with its ongoing use of the Accused Products, demonstrates Rackspace's knowledge and intent that the Accused Products be used in a manner that infringes the '591 Patent.

84.     Rackspace's actions and the manner in which the Accused Products are used, consistent with Rackspace's instructions, demonstrate Rackspace's specific intent to induce infringement of the '591 Patent.

85.     AMV is informed and believes, and on that basis alleges, that Rackspace knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to

infringe by practicing, either themselves or in conjunction with Rackspace, one or more claims of the '591 Patent.

86.    As a direct and proximate result of Rackspace's induced infringement of the '591 Patent, AMV has suffered and will continue to suffer damage.

87.    AMV is entitled to recover from Rackspace compensation in the form of monetary damages suffered as a result of Rackspace's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT III

## (DIRECT INFRINGEMENT OF THE '077 PATENT)

88.    AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

89.    Rackspace has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '077 Patent, including the Accused Products.

90.    The Accused Products embody a method for operating a FCoE HBA including a virtual fibre channel port and an Ethernet interface, as claimed in the '077 Patent.

91.    The Accused Products perform functions covered by at least Claim 1 of the '077 Patent.

92.    The Accused Products receive, at the the FCoE transformer, an FCoE frame via a layer 2 Ethernet switch.

93.    The Accused Products convert, at the FCoE transformer, the FCoE frame to a fibre channel frame.

94.     In the Accused Products, the FCoE frame includes a SOF field included in an FCoE transport header for providing an SOF character used to start a fibre channel frame, and the SOF field in the FCoE transport header is for encoding the SOF field, fibre channel frame.

95.     In the Accused Products, the FCoE frame includes an EOF field included in an FCoE transport header for providing an EOF character used to end the fibre channel frame, and the EOF field in the FCoE transport header is for encoding the EOF field, fibre channel frame.

96.     The Accused Products transport the fibre channel frame.

97.     Rackspace has directly infringed the '077 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '077 Patent.

98.     The Accused Products satisfy each and every element of the asserted claim of the '077 Patent either literally or under the doctrine of equivalents.

99.     Rackspace's infringing activities are and have been without authority or license under the '077 Patent.

100.    As a direct and proximate result of Rackspace's infringement of the '077 Patent, Rackspace has suffered and will continue to suffer damage.

101.    AMV is informed and believes that Rackspace knew or was willfully blind to the patented technology of the '077 Patent. Despite this knowledge or willful blindness, Rackspace has acted with blatant disregard for AMV's patent rights with an objectively high likelihood of infringement.

102.    AMV is informed and believes that Rackspace has made no efforts to avoid infringement of the '077 Patent, despite its knowledge and understanding that its products and systems infringe the '077 Patent.

103.    Therefore, Rackspace's infringement of the '077 Patent is willful and egregious, warranting an enhancement of damages.

104.    As such, Rackspace has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '077 Patent, justifying an award to AMV of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '077 PATENT)

105.    AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

106.    Rackspace is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '077 Patent, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '077 Patent.

107.    Rackspace's use of the Accused Products demonstrates specific intent to induce infringement of the '077 Patent. Rackspace encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '077 Patent.

108.    Rackspace's knowledge of the '077 Patent, combined with its ongoing use of the Accused Products, demonstrates Rackspace's knowledge and intent that the Accused Products be used in a manner that infringes the '077 Patent.

109.    Rackspace's actions and the manner in which the Accused Products are used, consistent with Rackspace's instructions, demonstrate Rackspace's specific intent to induce infringement of the '077 Patent.

110.    AMV is informed and believes, and on that basis alleges, that Rackspace knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Rackspace, one or more claims of the '077 Patent.

111.    As a direct and proximate result of Rackspace's induced infringement of the '077 Patent, AMV has suffered and will continue to suffer damage.

112.    AMV is entitled to recover from Rackspace compensation in the form of monetary damages suffered as a result of Rackspace's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '473 PATENT)

113.    AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

114.    Rackspace has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '473 Patent, including the Accused Products.

115.    The Accused Products embody a method of operating a FCoE HBA including virtual fibre channel port and an Ethernet interface as claimed in the '473 Patent.

116.    The Accused Products connect to a layer 2 Ethernet switch.

117.    The Accused Products send an FCoE frame via the layer 2 Ethernet switch.

118.    In the Accused Products, the FCoE frame includes a SOF field included in an FCoE transport header for providing an SOF character used to start a fibre channel frame, and the SOF field in the FCoE transport header is for encoding the SOF field, fibre channel frame.

119.    In the Accused Products, the FCoE frame includes an EOF field included in an FCoE transport header for providing an EOF character used to end the fibre channel frame, and the EOF field in the FCoE transport header is for encoding the EOF field, fibre channel frame.

120.    Rackspace has directly infringed the '473 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '473 Patent.

121.    The Accused Products satisfy each and every element of at least Claim 1 of the '473 Patent either literally or under the doctrine of equivalents.

122.    Rackspace's infringing activities are and have been without authority or license under the '473 Patent.

123.    As a direct and proximate result of Rackspace's infringement of the '473 Patent, AMV has suffered and will continue to suffer damage.

124.    AMV is informed and believes that Rackspace knew or was willfully blind to the patented technology of the '473 Patent. Despite this knowledge or willful blindness, Rackspace has acted with blatant disregard for AMV's patent rights with an objectively high likelihood of infringement.

125.    AMV is informed and believes that Rackspace has made no efforts to avoid infringement of the '473 Patent, despite its knowledge and understanding that its products and systems infringe the '473 Patent.

126.    Therefore, Rackspace's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

127.    As such, Rackspace has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '473 Patent, justifying an award to AMV of

increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '473 PATENT)

128.    AMV repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

129.    Rackspace is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '473 Patent, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '473 Patent.

130.    Rackspace's use of the Accused Products demonstrates specific intent to induce infringement of the '473 Patent. Rackspace encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '473 Patent.

131.    Rackspace's knowledge of the '473 Patent, combined with its ongoing use of the Accused Products, demonstrates Rackspace's knowledge and intent that the Accused Products be used in a manner that infringes the '473 Patent.

132.    Rackspace's actions and the manner in which the Accused Products are used, consistent with Rackspace instructions, demonstrate Rackspace's specific intent to induce infringement of the '473 Patent.

133.    AMV is informed and believes, and on that basis alleges, that Rackspace knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Rackspace, one or more claims of the '473 Patent.

134.    As a direct and proximate result of Rackspace's induced infringement of the '473 Patent, AMV has suffered and will continue to suffer damage.

135.    AMV is entitled to recover from Rackspace compensation in the form of monetary damages suffered as a result of Rackspace's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

AMV hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, AMV prays for relief against Rackspace as follows:

(A)    An entry of judgment that Rackspace has infringed and is directly infringing one or more claims of each of the Patents-in-Suit;

(B)    An entry of judgment that Rackspace has infringed and is indirectly infringing one or more claims of each of the Patents-in-Suit;

(C)    An order awarding damages sufficient to compensate AMV for Rackspace's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

(D)    A determination that Rackspace's infringement has been willful, wanton, deliberate, and egregious;

(E)    A determination that the damages against Rackspace be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(F)    A finding that this case against Rackspace is "exceptional" and an award to AMV of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(G)    An accounting of all infringing sales and revenues of Rackspace, together with post

judgment interest and prejudgment interest from the first date of infringement of

the '591 Patent, the '077 Patent, and the '473 Patent; and

(H)    Such further and other relief as the Court may deem proper and just.


Dated: June 23, 2025                          Respectfully submitted,

                                              /s/ *Christopher E. Hanba*
                                              Christopher E. Hanba
                                              Texas Bar No. 24121391
                                              chanba@dickinson-wright.com
                                              Joshua G. Jones
                                              Texas Bar No. 24065517
                                              jjones@dickinson-wright.com

                                              DICKINSON WRIGHT PLLC
                                              607 W. 3rd Street, Suite 2500
                                              Austin, Texas 78701
                                              Telephone: (512) 582-6889
                                              Facsimile: (844) 670-6009

                                              Ariana D. Pellegrino
                                              Michigan Bar No. P79104
                                              apellegrino@dickinson-wright.com
                                              DICKINSON WRIGHT PLLC
                                              500 Woodward Avenue, Suite 4000
                                              Detroit, MI 48226
                                              Telephone: 313-223-3500
                                              Facsimile: (844) 670-6009


                                              *Attorneys for Plaintiff*
                                              *Alpha Modus Ventures, LLC*